Standard Discount Co., Inc., Appellee, v. Polish Women's Alliance of America, Appellant.

Gen. No. 40,552.

Opinion filed October 25, 1939.

Barbara A. Fisher, of Chicago, for appellant; Donald T. Winder, of Chicago, of counsel.

Victor H. Bloom, of Chicago, for appellee.

Mr. Justice Burke delivered the opinion of the court.

In 1915 Helen Kaszeska became an insured member of the Polish Women's Alliance of America, a fraternal beneficiary society, chartered by the State of Illinois. The society thereupon issued a death benefit life insurance certificate in the sum of $500, payable, in case of her death, to her husband. The insured died on or about March 25, 1938. At that time she was in good standing in the society and the insurance contract was in full force and effect. After her death (and on the day of her death) the beneficiary executed an assignment of his interest under the certificate to the mortician, who, in turn, on the same day again assigned the claim to plaintiff. The original assignment contained a power of attorney, appointing plaintiff attorney in fact for the beneficiary, with full power to make collection of and to receipt for the proceeds of the certificate in the name of the beneficiary. Plaintiff served the assignment on the defendant on the same day, March 25, 1938. On April 27, 1938, defendant wrote a letter to plaintiff informing the latter that in accordance with the by-laws of the society, the assignment would not be recognized, and that payment of the claim would be made to the beneficiary through the financial secretary of the group of which deceased was a member. Accordingly, the society paid $500, the amount designated in the certificate, to the widower. The latter voluntarily gave $450 to the mortician, and he in turn gave that sum to plaintiff to apply on the assignment. The instant cause was filed in the municipal court of Chicago on September 7, 1938, and sought to recover

the sum of $50, being the difference between the amount of the certificate, and the amount the widower, through the mortician, returned to the plaintiff. There is no dispute as to the facts. The court found the issues for plaintiff and rendered judgment against defendant in the sum of $50, to reverse which this appeal is prosecuted.

Section 894, ch. 73, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 66.957], provides that "every society, . . . without capital stock, . . . organized or carried on solely for the benefit of its members and their beneficiaries, and not for profit, having a lodge system with ritualistic form of work and a representative form of government and which makes provision for the payment of benefits in accordance with this article, is hereby declared to be a Fraternal Benefit Society." Section 898 provides that "no beneficiary shall have or obtain any vested interest in the proceeds of any certificate until such certificate has become due and payable in conformity with the provisions of the insurance contract." Section 900 authorizes any fraternal benefit society to make provisions for the payment of funeral benefits to the extent of such portion of any payment under the certificate as may reasonably appear to the society to be due to any person equitably entitled thereto by reason of having incurred expense occasioned by the burial of the member, provided the funeral benefits shall not exceed the sum of $200. Section 901 requires the society to issue to each beneficial member a certificate specifying the amount of benefit provided thereby, and shall provide that the certificate together with any riders or indorsements, the articles of incorporation, the constitution and by-laws of the society and the application for membership and declaration of insurability (in lieu of a medical examination) signed by the applicant upon or attached to the certificate and made a part thereof, with all amendments to each, thereof, shall constitute the entire contract between the society and the member,

and further provides that "any changes, additions or amendments to said articles of incorporation . . ., constitution or by-laws duly made or enacted subsequent to the issuance of the benefit certificate, shall bind the member and his beneficiaries, and shall govern and control the agreement in all respects the same as though such changes, additions or amendments had been made prior to and were in force at the time of the application for membership." Paragraph 6 of section 908 provides that "every society shall have the power to make a constitution and by-laws for the government thereof, the admission of its members, the management of its affairs and the fixing and readjusting of the rates of contribution . . . from time to time; and it shall have the power to change, alter, add to or amend such constitution and by-laws, and shall have such other powers as are necessary and incidental to the carrying into effect of the objects and purposes of the society not in conflict with the provisions of this article or amendments thereto." Section 925 provides that "the money or other benefit, charity, relief or aid to be paid, provided or rendered by any society authorized to do business under this article shall not be liable to attachment by trustee, garnishee, or other process, and shall not be seized, taken, appropriated or applied by any legal or equitable process, or by operation of law to pay any debt or liability of a certificate holder or of any beneficiary named in a certificate, or of any person who may have any right thereunder."

Paragraph 3 of article 14 of the by-laws provides that "a beneficiary cannot be designated by a will, and the death benefit that is payable upon the death of a member cannot be pledged, transferred or assigned by either the member or her beneficiaries, nor can it be paid to anyone in satisfaction of a debt, other than to the person or persons designated in the certificate of insurance, except in such cases as are specifically provided for in these By-laws." Article 24 of the by-laws

provides that "upon the death of a member in good standing the President shall designate a Committee of three, who shall identify the body and ascertain the circumstances surrounding the death, and that the report of this Committee with the proof of death, certified by the President and Financial Secretary and under the seal of the Group, shall be transmitted to the General Secretary upon a form furnished by her. The report shall contain the name and surname of the deceased member, her age and date of her admission, the number and amount of the certificate, the date and cause of her death. The certificate shall be transmitted with the proofs of death prior to the payment of the mortuary benefit. Within 14 days after receipt of the official report of the death of a member, and after the confirmation thereof by the General Administration, the General Secretary shall issue a draft upon the General Treasurer payable to the person or persons designated in the certificate of insurance, for the amount due in the particular case, and transmit the same to the Financial Secretary of the Group, of which the deceased was a member. Upon receipt of the draft from the General Secretary, the Financial Secretary of the Group shall directly deliver the same to the person or persons therein designated, whose endorsement thereupon and receipt therefor shall be witnessed by the President and Financial Secretary and entered of record."

Viewing the above provisions of the statutes, it is plain that the certificate, charter and by-laws, amendments thereto, the application for membership and the medical examination constitute the contract between the organization and the member. It is obvious also that fraternal benefit societies are organized and carried on for the benefit of the contemplated beneficiaries as well as the members.

The first proposition presented for our consideration is whether the right to the death benefit vested on the

death of the insured. The portion of section 898 which we quoted provides that no beneficiary shall have or obtain any vested interest in the proceeds of any certificate until such certificate has become due and payable in conformity with the provisions of the insurance contract. Defendant insists that the insurance contract did not become due and payable until (1) proofs of death were furnished, (2) passed upon by the home office of defendant, (3) until a check was drawn in favor of the beneficiary, (4) said check was transmitted to the financial secretary of the local group, (5) until the financial secretary delivered the check to the beneficiary, and (6) until the beneficiary signed the receipt for the payment, witnessed by the president and financial secretary of the group, and that, therefore, the beneficiary's interest could not vest until these steps were taken. Plaintiff responds by saying that the requirements of proof of death, etc., merely constitute the mechanics and routine of payment, and that the right of the widower to the amount called for by the contract vested at the time of the death of his wife. Defendant also calls our attention to the fact that all of the steps required by the by-laws were complied with by the beneficiary prior to the issuance of the check by the society and while the assignment was in effect. A careful consideration of the language of the by-laws convinces us that the death benefit became due at the time of the death of the insured, and that the requirements as to proof of death, etc., were merely steps in the process of establishing the claim. It will be observed that article 24 of the by-laws, which is the article dealing with the measures to be taken after the death of a member, states that the general secretary shall issue a draft upon the general treasurer payable to the person designated in the certificate "for the amount due in the particular case" and transmit the same to the financial secretary of the group. The by-laws recognize that the amount is due, even though

other steps are required, such as the delivery of the draft to the financial secretary of the group and the delivery by her to the payee, and the securing of his receipt and the witnessing of the receipt by the president and the financial secretary of the group. Hence, we are of the opinion that the provisions of section 898, that "no beneficiary shall have or obtain any vested interest in the proceeds of any certificate until such certificate has become due and payable in conformity with the provisions of the insurance contract," are not applicable. As pointed out, the insurance became due and payable on the death of the member. The steps required to be taken under the by-laws after the death of the member are for the protection of the society in order that no fraud may be committed. If it be true that the death benefit would not become payable until all of the enumerated steps had been taken, then in the event of the refusal or failure of the officers of defendant corporation to take any of the steps, the benefit would never become payable. The general rule is that upon the death of a member of a fraternal beneficiary society, the interest of the person designated as the beneficiary becomes vested. No one will dispute that a vested interest may be assigned.

The section providing that the benefit to be paid shall not be liable to attachment by trustee, garnishee or other process and shall not be seized, taken or appropriated by any legal or equitable process to pay any debt or liability of a certificate holder, or of any person who may have any right thereunder, applies only to hostile proceedings and is not designed to protect such certificate or the proceeds thereof from the voluntary act of a member or the beneficiary therein named. (*McGrew v. McGrew,* 190 Ill. 604; *Jarvis v. Binkley,* 206 Ill. 541.)

Finally, defendant urges that the provision of paragraph 3 of article 14 of the by-laws that "the death benefit that is payable upon the death of a member

cannot be pledged, transferred or assigned by either the member or her beneficiaries, nor can it be paid to anyone in satisfaction of a debt, other than to the person designated in the certificate of insurance,'' operates to vitiate the assignment. It is clear that the quoted by-law does not permit a beneficiary to assign his interest prior to the death of the member. No good reason has been presented as to why this by-law is not a wise and proper provision. A careful consideration of the last quoted by-law convinces us that the intention thereof is to limit and restrict the right of a member or beneficiary to pledge, assign or transfer during the lifetime of the member. The by-law does not purport to forbid assignment after the death of a member. We have held that under the contract of insurance before us, the right of the beneficiary became vested on the death of the member. We are satisfied that under the broad provisions of the insurance code a fraternal insurance society has the right to adopt reasonable by-laws, which becoming a part of the contract of insurance, bind not only the members, but the beneficiaries as well. However, we are convinced that under the contract before us, the death benefit became vested in the widower at the moment of the death of his spouse. He then had a clear right to assign the amount due him from the society.

For the reasons stated, the judgment of the municipal court of Chicago should be and it is affirmed.

*Judgment affirmed.*

DENIS E. SULLIVAN, P. J., and HEBEL, J., concur.